[Cite as *In re E.S.*, 2023-Ohio-3473.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE E.S., JR.                              :

A Minor Child                                :          Case Nos. 112199 and 112206

                                             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED
**RELEASED AND JOURNALIZED:** September 28, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-20-106024

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Daniel Van, Assistant Prosecuting Attorney,
*for appellant.*

Rachel A. Kopec, *for appellee.*

ANITA LASTER MAYS, A.J.:

{¶ 1} Plaintiff-appellant state of Ohio ("state") appeals the juvenile court's dismissal of the state's motion for the discretionary transfer for want of prosecution of defendant-appellee E.S., Jr. ("E.S."). We vacate the juvenile court's judgment.

## I.  Background and Facts

{¶ 2}  For efficiency, we extract pertinent facts from the previous appeal in this case. *In re E.S.*, 8th Dist. Cuyahoga No. 110378, 2021-Ohio-4606 (S. Gallagher, J., dissenting) ("*E.S. I*").

> The instant matter arose from an incident that occurred in the early morning of June 9, 2020. E.S., who was 16 years old at the time, was with his best friend E.M., driving around in a vehicle that had been reported stolen on May 25, 2020. E.M. was driving, and E.S. was in the passenger seat. A mutual friend of theirs, M.W., had requested a ride from E.S. on social media from a hotel party in Independence, Ohio. E.S. agreed to pick M.W. up and give her a ride home. Shortly after picking M.W. up, a Cuyahoga Heights police car attempted to effectuate a traffic stop of the vehicle for speeding. E.M. did not pull over, and a chase ensued. The vehicle went back onto the highway and eventually went off road and crashed in a ravine approximately 200 yards east of 4600 Hiedtman Parkway. While E.S. and M.W. were able to flee the scene, E.M. was found unconscious in the grass near the crashed vehicle with a bullet wound. He was taken to the hospital where he later died.

*E.S. I* at ¶ 2.

{¶ 3}  An arrest warrant was issued on July 15, 2020, for: Count 1, involuntary manslaughter; Count 2, reckless homicide; Count 3, having weapons while under disability; Count 4, receiving stolen property; and Count 5, improperly handling firearms in a motor vehicle. "Counts 1, 2, and 4 carried one-year firearm specifications, and Counts 1 and 2 also carried three-year firearm specifications. Counts 1, 2, 3, and 5 included forfeiture of weapon specifications." *Id*. at ¶ 3.

{¶ 4}  "On July 23, 2020, the state filed a notice of mandatory bindover and a request for a probable cause hearing as well as a motion requesting the juvenile court to relinquish jurisdiction pursuant to R.C. 2152.10(B) and Juv.R. 30(A) [for

the remaining discretionary transfers].” E.S. *I* at ¶ 4. “The juvenile court held a probable cause hearing on January 8, 2021, which was continued to and concluded on January 28, 2021. The state called 13 witnesses. The defense did not call any witnesses.” *Id.*

{¶ 5} The juvenile court denied the state's motion for mandatory bindover finding there was no probable cause on Counts 1 and 2, but found probable cause for the remaining counts:

> [u]pon the conclusion of all evidence presented relating to the matter herein and the arguments of counsel, the court finds that the child was 16 years of age at the time of the conduct charged.
>
> The Court finds that as to counts 1 and 2, there is not sufficient evidence to support the findings and theory of the acts alleged to find probable cause to believe that the child committed the acts.
>
> However, the Court further finds that there is probable cause to believe that the child committed an act that would be the crime of count 3, Having Weapons While Under Disability, in violation of Section 2923.13(A)(2) of the Revised Code and classified as a felony of the third degree if committed by an adult; count 4, of Receiving Stolen Property, in violation of Section 2913.51(A) of the Revised Code and classified as a felony of the fourth degree if committed by an adult, with one year firearm specification; and count 5, Improperly Handling of Firearms in a Motor Vehicle, in violation of Section 2923.16(B) of the Revised Code and classified as a felony of the fourth degree if committed by an adult.

*Id.* at ¶ 25.

{¶ 6} On March 17, 2021, the state appealed to this court and assigned a single error for review: “The juvenile court erred by finding there was no probable cause that E.S. committed involuntary manslaughter.” *Id.* at ¶ 26.

{¶ 7} This court affirmed the judgment, holding that “the state failed to present sufficient credible evidence that E.M.'s death was proximately caused by

E.S.'s commission of felonious charges in Counts 3, 4, 5 of the arrest warrant." *Id.* at ¶ 41. "We therefore hold the juvenile court did not err in finding the state did not present sufficient credible evidence to support a finding of probable cause for involuntary manslaughter." *Id.*

{¶ 8} The dissenting opinion "call[ed] on the Supreme Court of Ohio to review this case and reverse the outcome." *E.S. I* at ¶ 47. "To not take and address this issue will result in the Supreme Court's own precedent being undermined. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629." *Id.*

{¶ 9} The dissent added:

> [T]he state has no burden to disprove alternate theories of a case at a bindover proceeding. Second, the state's burden during a bindover hearing is not to establish guilt beyond a reasonable doubt, but to produce evidence that raises more than a mere suspicion of guilt. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 42. Third, "the resolution of the conflicting theories of the evidence, both of which were credible, is a matter for a trier of fact at a trial on the merits of the case, not a matter for exercise of judicial discretion at a bindover hearing in the juvenile court." *Id.* at ¶ 64, citing *State v. Iacona*, 93 Ohio St.3d 83, 96, 2001- Ohio 1292, 752 N.E.2d 937 (2001).

*E.S. I* at ¶ 52.

{¶ 10} On August 11, 2022, the state appealed the involuntary manslaughter finding to the Ohio Supreme Court and on October 25, 2022, the court accepted the following proposition of law:

> In a juvenile bindover probable cause hearing, circumstantial evidence is entitled to the same weight as direct evidence in determining whether there is probable cause and a reviewing court should examine the evidence and inferences in a light most favorable to the prosecution.

*In re E.S.*, 168 Ohio St.3d 1418, 2022-Ohio-3752, 196 N.E.3d 853 ("*E.S. II*"). In November 2022, the state moved the Ohio Supreme Court to stay the juvenile court amenability hearing on the predicate offenses scheduled for November 8, 2022. The Ohio Supreme Court had not issued a ruling by the hearing date.

{¶ 11} The state also requested that the juvenile court stay the proceedings due to lack of jurisdiction. Over the state's objection, the juvenile court proceeded with the November 8, 2022 amenability hearing on Count 3, having weapons while under disability, Count 4, receiving stolen property, and Count 5, improperly handling firearms in a motor vehicle. The state advised the court that it was "not making any arguments with regard to amenability because, again, it is our position that this court does not have jurisdiction to do anything with the case except in aid of the appeal at this stage." (Tr. 11.)

{¶ 12} The juvenile court inquired:

Court: But the only thing that can go to the Supreme Court is the issue you raised before the Eighth District, correct?

State: * * * [T]he issue before the Ohio Supreme Court is not exactly the same as the issue that was before the Eighth District Court of Appeals. It's framed slightly differently.

Court: In what way?

State: Well, so for the Eighth District Court of Appeals, and I would have to look at our briefing but the — gist of the assignment of error was that this court erred when it did not find probable cause with respect to the involuntary manslaughter count.

The issue that the Ohio Supreme Court accepted deals with whether circumstantial evidence and direct evidence are entitled to the same weight at a probable cause juvenile bindover hearing.

So that's why I say it's — it's kind of about the same thing, but it's also not. And I think you can see how they are framed slightly differently.

(Tr. 14-15.)

{¶ 13} The issue posed to this court in *E.S. I* was whether "[t]he juvenile court erred by finding there was no probable cause that E.S. committed involuntary manslaughter." *E.S. I* at ¶ 26. The state ultimately responded that the single proposition of law accepted by the Ohio Supreme Court was whether "in a juvenile bindover probable cause hearing[,] circumstantial evidence is entitled to the same weight as direct evidence in determining whether there is probable cause." (Tr. 16.)

Court: And just so that I'm clear, likewise, did you present that to the Eighth District Court of Appeals as part of your Brief in Support that probable cause — that I erred and probable cause should be found? Because they have, what, upwards of ten pages of facts adduced at trial.

Did those facts include both direct, as well as circumstantial evidence? Did * * * the Eighth District consider both?

State: Well, Judge, I'm not sure I want to try to get inside the minds of the appellate judges and tell you what they —

Court: But you saw the facts that they —

State: — did or did not consider.

Court: But you saw the facts that they quoted in their decision.

State: Right, judge. I — I can read their opinion the same as you, but —

Court: Okay. Okay. Which ones — because when you go to the Supreme Court, what are the circumstantial facts that you're saying should have this equivalent weight? Were those facts also cited by the Eighth District?

> Because if they were, then it seems to me, they considered even the circumstantial evidence.

State: Well, Judge —

Court: * * * And if there was this mixture, did you not argue the weight even then?

> Noted. Your Motion to Dismiss the Motion for Order to Relinquish Jurisdiction is granted for failure to prosecute.

> Matters will be set down for adjudicatory hearing.

(Tr. 17-18.)

{¶ 14} E.S. moved to dismiss the motion to transfer for want of prosecution based on the state's refusal to participate in the proceedings. In its judgment entry, the juvenile court declared that the state "presented no argument or evidence in support of its motion. Whereupon * * * counsel for child, entered an oral motion to dismiss the motion for discretionary transfer for want of prosecution. No reply was entered by the State of Ohio." Journal entry No. 0916277700, p. 1 (Nov. 8, 2022). "In light of the issue briefed by the State to the Ohio Supreme Court and the Eighth District's decision, the motion [to stay the proceedings] is not well-taken and is hereby denied." *Id.*

{¶ 15} The court explained:

The court finds, with the absence of evidence to allow the Court's consideration of the child's prior juvenile record, family environment, school record, efforts previously made to treat and rehabilitate the child, including prior commitments to the Department of Youth Services, the nature and severity of the offense, herein, the age, physical, and mental condition of the victim as effected by the matter herein, and other matters of evidence, the motion for dismissal is well taken for the State's failure to prosecute its motion.

It is therefore ordered that the motion for order to relinquish jurisdiction is denied as to the remaining counts 3, 4, and 5 of the complaint for failure to prosecute. This matter is continued for further proceedings pursuant to law for adjudication. Notice of hearing shall issue to all necessary parties.

*Id.*

{¶ 16} On November 30, 2022, the state filed two notices of appeal of the dismissal of the state's motion to transfer with the juvenile court — one for a direct appeal as of right and one by leave of court.[1] On December 15, 2022, the Ohio Supreme Court granted the state's motion to stay the lower court proceedings. *In re E.S.*, 168 Ohio St.3d 1475, 2022-Ohio-4501, 199 N.E.3d 559.[2] On January 6, 2023, this court granted leave for the state's appeal pursuant R.C. 2945.67(A).

## II. Assignment of Error

{¶ 17} The state assigns as error that the trial court erred in dismissing the state's motion for discretionary transfer for want of prosecution because: (1) the juvenile court lacked jurisdiction to take action during the pending appeal; and (2) the juvenile court's actions interfere with the grand jury's authority should *E.S. I* be reversed.

---

[1] The two appeals were assigned case numbers and consolidated.

[2] Oral argument before the Ohio Supreme Court in *E.S. II* was held on June 27, 2023.

## III. Discussion

**{¶ 18}** The state argues that the trial court retains jurisdiction over issues that are not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed per *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978), *Ormandy v. Dudzinski*, 9th Dist. Lorain No. 09CA009713, 2010-Ohio-2017. Conversely, a trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from. *Id.*

**{¶ 19}** The state argues that the discretionary transfer counts are the predicate offenses for the pending manslaughter case. R.C. 2151.23(H) provides that the court to which the case is transferred can determine the case in the same manner as if the case had originally been commenced in that court.

**{¶ 20}** The Ohio Supreme Court recently made clear in *State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, that

> an adult court is not necessarily limited to considering only the specific acts bound over from the juvenile court. After a case has been transferred from a juvenile court to an adult court, the adult court "has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court * * *." R.C. 2151.23(H). In [*State v.*] *Smith*, [167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297], we explained that the "the case" before the adult court is composed of the acts that were transferred to that court. *Id.* at ¶ 28.

**{¶ 21}** The court continued:

> We acknowledge that generally, a grand jury is empowered to return an indictment on any charges supported by the facts submitted to it. *See State v. Adams*, 69 Ohio St.2d 120, 431 N.E.2d 326 (1982), paragraph two of the syllabus, superseded by statute on other grounds as stated in

*State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894. But a grand jury may not consider additional charges arising from a different course of conduct or events that have not been properly bound over by the juvenile court. *State v. Weaver*, 6th Dist. Lucas No. L-18-1078, 2019-Ohio-2477, ¶ 14 (citing cases from several Ohio appellate districts). This means that a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred. *Id.*; *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, at ¶ 35.

*Id.* at ¶ 13.

{¶ 22} Thus, we find that the trial court's actions on the predicate offenses and the resultant dismissal of the state's motion to dismiss the discretionary transfer motion are inconsistent with the Ohio Supreme Court's jurisdiction over the pending appeal. An adjudication entered by a court without jurisdiction is a nullity and is void. *Story v. Price-Story*, 8th Dist. Cuyahoga No. 94085, 2010-Ohio-4675, ¶ 7, citing *Fifth St. Realty Co. v. Clawson*, 9th Dist. Lorain No. 94CA005996, 1995 Ohio App. LEXIS 2565 (June 14, 1995).

{¶ 23} In *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, the state appealed the juvenile court's decision to dismiss a murder charge and amend a felony murder charge to manslaughter in a mandatory bindover proceeding. The state appealed. The juvenile court refused to stay the proceedings and moved forward with adjudication. "The juvenile court supported its decision to proceed by reasoning that the state lacked a final and appealable order." *Id.* at ¶ 11.

{¶ 24} Pertinent here, the court held that the "judge's opinions regarding the propriety of the state's appeal could not alter the fact that the filing of the notice of

appeal had divested the juvenile court of any jurisdiction to proceed with the adjudication during the pendency of the appeal." *Id.* "[T]he determination as to the appropriateness of an appeal lies solely with the appellate court. A juvenile judge has no authority to determine the validity or merit of an appeal." *Id*. at ¶ 10, citing *In re Terrance P.*, 124 Ohio App.3d 487, 489, 706 N.E.2d 801 (6th Dist.1997) ("The trial court does not have any jurisdiction to consider whether the person has validly invoked the jurisdiction of the appellate court.").

{¶ 25} In this case, the juvenile court refused to stay the November 8, 2022, hearing though it confirmed receipt of notification of the appeal from the Ohio Supreme Court. The state argued the juvenile court lacked jurisdiction and the discretionary counts were the predicate offenses for the manslaughter count on appeal. The trial court questioned the state about the issues appealed to this court and subsequently to the Ohio Supreme Court.

{¶ 26} The trial court journalized "[i]n light of the issue briefed by the State to the Ohio Supreme Court and the Eighth District's decision, the motion [to stay the proceedings] is not well-taken and is hereby denied." The juvenile court reasoned that the appeal did not affect the juvenile court's jurisdiction. "[T]he determination as to the appropriateness of an appeal lies solely with the appellate court. A juvenile judge has no authority to determine the validity or merit of an appeal." *In re S.J.* at ¶ 10, citing *In re Terrance P.* at 487.

{¶ 27} Our finding renders the remaining errors moot.

## IV. Conclusion

{¶ 28} The trial court was divested of jurisdiction to issue the order dismissing the motion for discretionary transfer while *In re E.S. II* was pending in the Ohio Supreme Court. Accordingly, the order is void and must be vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

LISA B. FORBES, J., CONCURS WITH MAJORITY OPINION AND SEPARATE CONCURRING OPINION;
MICHAEL JOHN RYAN, J., CONCURS (WITH SEPARATE OPINION)


MICHAEL JOHN RYAN, J., CONCURRING:

{¶ 29} I concur and write separately to emphasize additional reasons why the juvenile court proceeding with the amenability hearing in this case is inconsistent with the matter pending on appeal to the Ohio Supreme Court.

{¶ 30} Pursuant to R.C. 2152.12(C), the juvenile court must order an investigation into E.S.'s history, education, mental state, family situation, "and any other factor bearing on whether the child is amenable to juvenile rehabilitation." Under R.C. 2152.12(D) and (E), the court considers a nonexhaustive list of factors

for and against bindover. The court must consider the statutory factors but may also consider "any other relevant factors." *See State v. Kimbrough*, 8th Dist. Cuyahoga Nos. 108172 and 108173, 2020-Ohio-3175, ¶ 62; *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 35 (8th Dist.); *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 8.

{¶ 31} R.C. 2152.12(D) lists factors that support transfer of jurisdiction of the case:

> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> (3) The child's relationship with the victim facilitated the act charged.
>
> (4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
>
> (5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.
>
> (6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
>
> (7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
>
> (8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 32} R.C. 2152.12(E) lists factors to be considered that support retention of jurisdiction by the juvenile court.

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 33} Whether there was sufficient evidence that it was more likely than not — i.e., probable cause — that E.S. committed involuntary manslaughter and reckless homicide certainly would bear on whether he is amenable to rehabilitation in the juvenile system.

{¶ 34} Additionally, because at least one of the discretionary transfer counts must serve as the predicate offense for the involuntary manslaughter charge, should the Ohio Supreme Court reverse the trial court on the finding of no probable cause,

the entire case is necessarily bound over to common pleas court. R.C. 2152.12(I). Stated another way, the facts in the underlying case that were used to determine probable cause are also germane to the court's assessment of whether E.S. is amenable to rehabilitation in the juvenile system. The latter cannot effectively be determined without reference to the former, thus requiring some finality on the probable cause determination. Accordingly, the trial court is not able to proceed without closure regarding probable cause on the mandatory bindover offense. Thus, to decide whether E.S. is amenable to rehabilitation in the juvenile court on the remaining counts is an act inconsistent with the appeal.